UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>EDWARD ERIC BEHRENS,<br><br>    Defendant. | Case No. 1:19-cr-0044-BLW<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO SUPPRESS** |

## INTRODUCTION

The Court has before it a motion to suppress filed by the defendant, Edward Eric Behrens (Dkt. 10). The Court held an evidentiary hearing on May 22, 2019. For the reasons explained below, the Court will deny the motion.

## BACKGROUND

On February 2, 2019, City of Boise Police Officers Connor Burch and Andrea Matheus performed a traffic stop on a black Chevrolet Impala while on patrol near Sunrise Rim Road in Boise, Idaho. Officers Burch and Matheus decided to initiate the traffic stop because the Impala did not have a properly-affixed front license plate. Dkt. 10-1 at 2; Dkt. 12 at 2-3. After observing the Impala take several turns into parking lots and side streets indicating an effort to "avoid police presence," the officers initiated the stop. Dkt. 10-2 at 6. At approximately 8:21:10 p.m. Officer Burch exited his police cruiser, approached the driver's side of the vehicle, and informed Mr. Behrens that he had

been pulled over because the Impala did not have a front license plate. Dkt. 10-1 at 2. Mr. Behrens responded that he had a front license plate, but that he had placed it in the lower right corner of the front windshield. *Id.* Officer Burch explained to Mr. Behrens that according to Idaho law the license plate must be attached to the front of the vehicle, not propped in the front windshield. Dkt. 10-2, Ex. B, Video No. 1.

Then Officer Burch asked for Mr. Behrens' license, registration, and proof of insurance. Dkt. 10-1 at 3. Mr. Behrens acknowledged to the officer that he did not have a license because it was suspended for failure to pay child support. *Id.* Officer Burch proceeded to investigate this potential violation as well. Dkt. 10-2, Ex. B, Video No. 1. Because Mr. Behrens did not have a license, Officer Burch requested an alternate form of identification and Mr. Behrens gave him a copy of the citation suspending his license, his identification card, and the vehicle's registration. Dkt. 10-1 at 3. While waiting for Mr. Behrens to produce his license and registration, Officer Burch inquired into Mr. Behrens' probationary status. *Id.* Mr. Behrens responded that he was on probation for distributing methamphetamines, that he was compliant with the conditions of his probation, and that he had been a drug user in the past. *Id.* at 3-4. Officer Burch stopped questioning Mr. Behrens as soon as he was provided with the proper documentation. *Id.* at 4. In all, the exchange lasted about 2 minutes 39 seconds. *Id.* Two other officers were present during the stop: Officer Matheus, who was riding along with Officer Burch as a trainer, and Officer Nick Peterson, who arrived in a separate vehicle while Officer Burch was questioning Mr. Behrens. *Id.*

After receiving Mr. Behrens' documentation at 8:24:02 p.m., Officer Burch returned to his cruiser to run a check on Mr. Behrens' lack of active license. At the same time, Officer Matheus requested that Officer Peterson stay by the vehicle. Dkt. 10-1 at 4. Officer Peterson engaged in small talk with Mr. Behrens while waiting by his car. Dkt. 10-2, Ex. B, Video Nos. 1 & 2. Several minutes passed, and at approximately 8:30 p.m. Officer Peterson requested that Mr. Behrens exit the vehicle. *Id.* at 5. When Mr. Behrens asked why, Officer Peterson responded that the police were bringing a drug dog by the car, and he wanted Mr. Behrens to get out so that he "doesn't get bit." *Id.* The police walked Mr. Behrens away from his Impala at approximately 8:31 p.m., and Officer Peterson waited with him for approximately two minutes. Dkt. 10-2, Ex. B, Video Nos. 1-3. Officer Matheus then inquired whether Mr. Behrens had any weapons and then removed a knife from Mr. Behrens' front jacket pocket. *Id.*

At approximately 8:31:41 p.m. Officer Matthew Lane, who had arrived in the interim, circled the vehicle with a drug dog for approximately one minute, until 8:32:44 p.m. Dkt. 10-2, Ex. B, Video No. 3. The dog alerted next to the driver's side door at approximately 8:32:14 p.m. *Id.* Meanwhile, the other officers kept Mr. Behrens away from his vehicle. *Id.* Mr. Behrens asked Officer Peterson, "Can I get back in my car now?" Dkt. 10, Ex. B, Video No. 5. Officer Peterson responded, "No. Maybe in just a few minutes." *Id.*

During the stop for an improperly affixed license plate, Officer Burch learned that Mr. Behrens was driving with a suspended license. *See* Dkt. 10-2, Ex. B, Video No. 1. After receiving Mr. Behrens' proof of identification and registration, Officer Burch

MEMORANDUM DECISION & ORDER - 3

returned to his police cruiser to investigate relevant facts behind Mr. Behrens' suspended license and prepare the citation. *Id*. Officer Burch arrived at his car at 8:24:20 p.m. and the video shows him preparing the citation until approximately 8:35 p.m. *Id*. The police call records confirm that Officer Burch was investigating outstanding warrants and confirming Mr. Behrens' registration, insurance, and lack of active license during that time. Dkt. 10-2 at 15-23. Nothing on the video shows Officer Burch was in any way involved with or delayed by the K-9 sniff. Dkt. 10-2, Ex. B at Video Nos. 1-3. Officer Burch confirmed as much at the May 22, 2019 hearing. The Court found Officer Burch's testimony during the May 22, 2019 hearing credible, and that it confirmed the information available on the body camera footage and in the police records.

## STANDARD OF REVIEW

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Thus, the "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809–10 (1996).

"[T]here is 'no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails.'" *Terry v. Ohio*, 392 U.S. 1, 21 (1968) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 536-37 (1967)). Generally, "searches and seizures conducted outside the judicial process,

without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). "[A] search conducted pursuant to a valid consent is constitutionally permissible." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Further, "[a] seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015).

To determine whether the length of a particular stop is reasonable, courts must look to the purpose of the stop. *Id.* ("the tolerable duration of police inquiries ... is determined by the seizure's mission ..."). A stop becomes unlawful when it is prolonged "beyond the time reasonably required" to complete the tasks necessary to effectuate the mission of the stop. *Id.* at 1614-15. Thus, an officer's authority to detain an individual ends when those tasks are, or reasonably should be, completed. *Id.* at 1614.

When an officer prolongs a stop to conduct an unrelated inquiry, he may do so only on the basis of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21; *see also Rodriguez,* 135 S. Ct. at 1615 (finding that an officer may not prolong an otherwise lawful traffic stop to conduct unrelated checks "absent the reasonable suspicion ordinarily demanded to justify detaining an individual."). An officer may, however, take "certain negligibly burdensome precautions in order to complete his mission safely," where the officer's safety interest "stems from the mission of the stop itself." *Rodriguez,* 135 S. Ct. at 1616.

# ANALYSIS

Mr. Behrens argues that evidence obtained as a result of the traffic stop and subsequent search should be suppressed on the following grounds: (1) the initial stop was based on the officer's mistake of law, and is therefore unreasonable under Article 1, § 17 of the Idaho Constitution; (2) the traffic stop was impermissibly abandoned, expanded, and delayed without independent reasonable suspicion of criminal activity; and (3) no exception to the warrant requirement justifies the violation to Mr. Behrens' rights under the U.S. and Idaho Constitutions. The Government responds that the police had reasonable grounds to stop Mr. Behrens in the first place, that the stop was not extended beyond its purpose, and that, therefore, the seizure and subsequent search do not violate either the U.S. or Idaho Constitutions. For the reasons that follow, the Court will deny the motion to suppress.

1. **Mistake of Law**

As detailed in his report, and as confirmed by the body camera footage and the testimony offered on May 22, 2019, Officer Burch pulled Mr. Behrens over because it appeared that he did not have a front license plate on his vehicle. Officer Burch did so because this constituted a violation of I.C. § 49-428, Display of Plate and Stickers, which provides that license plates "shall be attached, one (1) in the front and the other in the rear" and that "[e]very license plate shall at all times be securely fastened to the vehicle to which it is assigned to prevent the plate from swinging, be at a height not less than twelve (12) inches from the ground, measuring from the bottom of the plate, [and] be in a place and position to be clearly visible." In observing Mr. Behrens' driving, Officer

Burch was unable to see a front license plate attached in the typical front bumper location. After initiating the traffic stop, he approached Mr. Behrens' stopped vehicle and again confirmed the lack of a front license plate as the reason he pulled Mr. Behrens over. *See* Dkt. 10-2, Video No. 1. While the front license plate may have been positioned in the car's front window, it was not "clearly visible" to Officer Burch. This constituted a violation of I.C. § 49-428.

The few courts in Idaho that have interpreted I.C. § 49-428 have found the law to be clear and a justifiable reason to initiate a traffic stop. Interpreting whether a license plate obstructed by a trailer hitch violated the statute, the Idaho Court of Appeals found its language to be "unambiguous" and followed the law's "plain, obvious, and rational meaning." *State v. Tregeagle*, 391 P.3d 21, 24–25 (Idaho Ct. App. 2017), *review denied* (Mar. 31, 2017). The court found that the officer's observation of an obstructed license plate provided reasonable suspicion to stop the defendant's vehicle. *Id.* at 26. Likewise, in *State v. Martin*, the Idaho Court of Appeals found a license plate that appeared to be fastened with one bolt and to be hanging at a thirty (30) degree angle provided "reasonable and articulable suspicion" for a traffic stop to investigate potential violation of § 49-428. 218 P.3d 10, 17 (Idaho Ct. App. 2009).

Mr. Behrens asks the Court to find Officer Burch pulled him over based on a mistaken understanding of I.C. § 49-428 in violation of the Idaho Constitution. This, he argues, would make the fruits of the resulting search subject to suppression under the Idaho Constitution, even if such a mistake of law would not require suppression under the Fourth Amendment to the U.S. Constitution. But the Ninth Circuit has repeatedly held

that district courts should not consider a heightened state constitutional standard when considering a motion to suppress in a federal criminal action. *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1373–74 (9th Cir. 1987); *see also United States v. Dauenhauer*, 745 F. App'x 41, 42 (9th Cir. 2018). The Court only considers whether law enforcement gathered the evidence in violation of federal law or the U.S. Constitution when making such a determination. Accordingly, the Court will not apply the provisions of Article I, § 17 in determining whether to suppress the evidence discovered in Mr. Behrens' vehicle.

However, if Court were required to apply the Idaho Constitution, the result would be the same. Even if the Idaho Constitution required the suppression of evidence seized under a mistaken understanding of state law, this would not require suppression of the evidenced seized during the traffic stop because Officer Burch was not mistaken as to the requirements of Idaho law.

Mr. Behrens argues Officer Burch held the mistaken belief that "the license plate must be affixed to the front bumper." Dkt. 10-1 at 8. But that was not Officer Burch's rationale. Almost immediately upon approaching the vehicle Officer Burch told Mr. Behrens that "in the State of Idaho [the license plate]'s got to be affixed to the *front of the vehicle*." *See* Dkt. 10-2, Video No. 1 (emphasis added). Officer Burch never suggested the license plate had to be on the bumper, which is the mistake Mr. Behrens is claiming here. *See id.* Idaho law requires that every license plate "shall at all times be securely fastened to the vehicle" and "be in a place and position to be clearly visible." I.C. § 49-428 (2). Mr. Behrens was pulled over because his license plate was not readily visible to Officer Burch from his vantage point inside his patrol car. *See* Dkt. 10-2 at 5 & Video

No. 1.  While it turned out that the license plate was positioned in the front window of the vehicle, this still violated both the "securely fastened" and the "clearly visible" requirements of § 49-428 (2).  The Court therefore finds Officer Burch did not make a mistake of law in pulling over Mr. Behrens for failing to comply with the requirements of the statute.

   2.  **The Stop**

The record before the Court and the evidence presented at the May 22, 2019 hearing indicate that Officer Burch had reasonable suspicion to stop Mr. Behrens for driving a car in violation of § 49-428 (2). Even if the traffic stop was reasonable, Mr. Behrens argues that the stop was impermissibly abandoned, expanded, and delayed without independent reasonable suspicion of criminal activity. Dkt. 10-1 at 9-13. Traffic stops are "presumptively temporary and brief" with the "vast majority of roadside detentions last[ing] only a few minutes." *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984). The Supreme Court has further clarified the scope of permissible investigation during such a stop, such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015). The "critical question is whether the [tasks unrelated to the traffic mission] prolongs – i.e., adds time to – the stop." *United States v. Evans*, 786 F.3d 779, 786 (9th Cir. 2015).

In assessing whether a detention is too long for an investigative stop, it is appropriate to examine whether police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. *United States v. Sharpe*, 470 U.S.

675, 686 (1985). There is no hard and fast way to gauge the reasonableness of length of detention; this will be determined by whether officers' actions were reasonably related in scope to the circumstances which justified the detention. *Id.* Although a drug dog sniff is not an ordinary incident to a traffic stop, it is reasonable as long as it does not prolong the stop beyond the time reasonably required to investigate the reason for the initial seizure. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). And, an officer's "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez,* 135 S. Ct. at 1614.

Here, Mr. Behrens argues that the police impermissibly abandoned the original mission of the stop—the alleged violation of § 49-428—by inquiring into Mr. Behrens' criminal history and subsequently performing a K-9 sniff. Dkt. 13 at 5-6. Mr. Behrens argues both of these actions prolonged and expanded the traffic stop without reasonable suspicion to do so, rendering any evidence gathered as a result to be inadmissible under the Fourth Amendment. *Id.* at 7-8.

   a. *Officer Burch's Questioning*

Mr. Behrens first argues that Officer Burch's questions into his probationary status and prior criminal conduct expanded the scope of the traffic stop. Dkt. 13 at 6. Mr. Behrens argues that this amounts to abandonment of the traffic stop and expansion into impermissible questioning because "[t]he standard is not simply whether the officer's actions added time to the stop." *See id.* But, as the Supreme Court has repeatedly held, that is exactly the standard: "An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter

into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333, (2009); *see also United States v. Evans,* 786 F.3d 779, 786 (9th Cir. 2015). Whether Officer Burch's questions extended the length of his reasonable stop, therefore, controls the Court's analysis of the reasonableness of the police's seizure.

Mr. Behrens contends that the following exchange regarding his criminal history impermissibly extended the traffic stop. This exchange appears on Officer Burch's on-body-video camera from 8:22:54 to 8:23:52 p.m.:

> Officer Burch: You, ah, on probation or anything like that, man?
> Defendant: Yes I am.
> Officer Burch: Oh you are, ok? What for, if you don't mind me asking.
> Defendant: With the Feds, ah.
> Officer Burch: With the Feds? Well what for?
> Defendant: For distribution from many years ago.
> Officer Burch: Ah, ok. How long ago?
> Defendant: Ah, 2011.
> Officer Burch: 2011?
> Defendant: Yes.
> Officer Burch: Ok. Anything in the car I should know about tonight?
> Defendant: No.
> Officer Burch: What's that? No? Ok. What were you distributing if you don't mind me asking?
> Defendant: Ah, I was distributing, ah, methamphetamines.
> Officer Burch: Methamphetamines?
> Defendant: Yeah.
> Officer Burch: Were you using too? Or just . . .
> Defendant: Yea. I was a drug user.
> Officer Burch: Ok. You complying with your P.O. and all that, man?
> Defendant: Yeah. Of course.
> Officer Burch: Ok. Any guns or cars, sorry, guns or knives in the car? Sorry tongue twister.
> Defendant: No.

*See* Dkt. 10-2, Video No. 1. The entire conversation happens while Officer Burch waits for Mr. Behrens to find his registration. Dkt. 12 at 4; *see also* Dkt. 10-2, Video No. 1. The video shows Mr. Behrens searching his glove compartment and shuffling several papers to find his registration during the conversation with Officer Burch, both entirely normal incidents to any traffic stop. *See, e.g.* Dkt. 10-2 Video No. 1. Mr. Behrens does not appear to slow his search for the registration in response to Officer Burch's questions, or do anything else that would indicate the stop has been prolonged. Without evidence that Officer Burch's questions lengthened the lawful traffic stop in any way, the Court finds these questions did not prolong the stop, and do not make the seizure during the traffic stop unreasonable under the Fourth Amendment.

  b. *K-9 Sniff*

Mr. Behrens also argues that the K-9 sniff police performed between approximately 8:31 and 8:33 p.m. constituted an unreasonable abandonment and elongation of the original traffic stop. Mr. Behrens points to the fact that by the time the K-9 arrived "the records search was completed with no returns." Dkt. 10-1 at 12; Dkt. 10-2 at 16. Although a drug dog sniff is not an ordinary incident to a traffic stop, it is reasonable as long as it does not prolong the stop beyond the time reasonably required to investigate the reason for the initial seizure. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). And, an officer's "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez*, 135 S. Ct. at 1614.

The record in this case and evidence presented at the May 22, 2019 hearing confirm that the K-9 sniff did not prolong the traffic stop, and that the police's search of Mr. Behrens' car was reasonable. Officer Burch investigated Mr. Behrens for violating I.C. § 49-428 and I.C §18-8001(1)(b) ("Driving Without Privileges") between approximately 8:24:20 and 8:35 p.m. Dkts. 10, 10-2. The evidence also confirms that the K-9 sniff began at approximately 8:31:41 p.m. *Id.* The drug dog activated, indicating the presence of drugs, at 8:32:14 p.m., three minutes prior to the completion of Officer Burch's investigation of Behrens' driving status. *Id.*

It is also highly significant that Officer Burch discovered Mr. Behrens was driving without privileges in violation of §18-8001(1)(b). Simply put, Mr. Behrens could not have driven away in his vehicle after the stop. Thus, the police could have performed the K-9 sniff even after Officer Burch had finished writing Mr. Behrens' ticket because Mr. Behrens would have to contact another driver, park the car in a secure area, or have it towed. The vehicle wasn't going anywhere until some indeterminate time after the traffic infraction had been completed at roughly 8:35 p.m. Because the K-9 sniff occurred during Officer Burch's reasonable period of investigation, and did not prolong the stop in any way, the K-9 sniff did not prolong the stop and is not grounds to suppress the evidence discovered as a result of the search.

Accordingly, the Court will not suppress the evidence the police gathered during the February 2, 2019 stop, and will deny Mr. Behrens' motion.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED THAT:

1. Defendant Edward Eric Behrens' Motion to Suppress (Dkt. 10) is DENIED.

DATED: July 9, 2019

_____
B. Lynn Winmill
U.S. District Court Judge