UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

UNITED STATES OF AMERICA,

Plaintiff,

v.

EDWARD ERIC BEHRENS,

Defendant.

Case No. 1:19-cr-00044-BLW

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Before the Court is the Government's Motion in Limine (Dkt. 51) to exclude hearsay statements offered by defense witness, Sheldon Snapp. The motion is fully briefed and at issue. For the reasons set forth below, the Court will grant the Government's motion.

## BACKGROUND

Trial in this matter is set for August 31, 2020. Defendant, Edward Behrens, was indicted on one count of possession with intent to distribute methamphetamine. Dkt. 24. It is alleged by the Government that Boise Police officers conducted a traffic stop of Behrens' car. During the stop a drug dog alerted to the presence of narcotics in the vehicle. Officers found a package containing

425.68 grams of methamphetamine. *See* Dkt. 51 at 2.

Defendant requested, and the Court issued a writ of habeas corpus ad testificandum (Dkt. 49) to have Sheldon Snapp testify at Behrens' trial. It is anticipated that Behrens will call Snapp to provide foundation for, and testify to, the contents of text messages, recorded phone calls, and other statements made by Heather Mayes to Snapp. Mayes appears to be, or have been, Behrens' girlfriend. Behrens indicates he may call Mayes to testify, but at this time it is not known whether she will be unavailable. Behrens believes that Snapp will testify that Mayes confessed to him that the methamphetamine found in Behrens' car was hers.

Following Behrens' arrest in February 2019, Mayes communicated frequently with Snapp, who was incarcerated at the Canyon County Jail. Relevant here, Mayes sent Snapp the following text messages:

> **February 6, 2019, 5:03 p.m.** "I care about eddy [Behrens] allot and in the beginning no I didn't love him but ultimately in the end I did and I do. I'm hurt and lost with him locked up I want to help but don't know how. I sold that truck to get a lawyer and he [w]ants to talk to eddy but I can't get in touch. My entire world fell apart in one day Dom. I don't even know what to do other than be strong for him and try my best to get him help."

> **February 8, 2019, 5:09 p.m.** "…I'm trying to save all the money I can to get a good lawyer. I'm not gonna let him go down for life if it comes down to it I'll tell them the truth that it was mine I would rather do the three years"

**February 8, 2019, 5:10 p.m.** "I will not let him do life no jury will convict him if I get on the stand and say that it was mine I left it in there like I said I didn't really love him in the beginning but I love him and I care about him and he's not going to do life I won't let it happen"

**February 8, 2019, 5:13 p.m.** "I guess isn't fair I'm left out here all by myself and I don't know what to do but I've thought it through and I know what I will do he would do it for me I know he would"

**February 8, 2019, 5:43 p.m.** "Thank God that you will be with him do not tell him that I told you I would take the charges. I'm really trusting you on that because you and I both know he would not want me to do that or let me do that. But he doesn't get a choice anymore I make the decisions and I've already decided"

> Snap replied: "that's love what you will do to protect yours got nothing but love for u..He my boy we been through a lot. He don't deserve no life sentence…"

**February 8, 2019, 7:06 p.m.** "The way I look at it as he save my life he loves me and he cares about me and if I can help it I'm not gonna let them go down like that I'll play it cool everything fine and dandy until we get to trial and they'll put me up there and I'll take the blame I have no record I'll get the minimum I can do three years I'm busting my ass to get this lawyer so hopefully we won't have to go that route but regardless I'm not scared he has gone [a]bove and beyond for me I probably wouldn't be here if it wasn't for him. But please if he is your brother like you say he is and I know he is then you will keep quiet and let me handle mine. I'm a grown ass woman and I know the consequences no jury in their right mind will convict somebody like that if I get up there and tell the truth if you catch my drift"

**February 8, 2019, 7:38 p.m.** "This is his life. This is my life and if three years is what's going to allow him to have his back you best believe I do it in a heartbeat"

**February 9, 2019, 1:25 p.m.** "Dom my heart hurts, I can't stop thinking about eddy. I miss him so much I feel empty and I'm barley holding on barley keeping it together. When I talk to him I pretend like everything is ok because I don't want him to stress but nothings okay I starting crying the second we hang up. I cry myself to sleep. I feel like I can't do this without him I'm scared"

**February 9, 2019, 4:13 p.m.** "I'm busting my ass two jobs to get him a lawyer. I'm going to talk to one Monday about my idea. I'm worried that they'll say they don't know who it belongs to and charge as equals. I need to cover every avenue and be 100% sure I know what I'm getting in to."

Snapp replied: "yeah cover all bases but I'm pretty sure it'll work .I know it'll throw a wrench in that shit…."

*Gov't Ex. 4*, Dkt. 55-4 (errors in original).

These text messages are best understood in the context of a number of earlier conversations Mayes had with Behrens and with Detective McCarthy.  For example, on February 5, 2019 Behrens called Mayes from the jail and the call was recorded.[1]

| | |
|---|---|
| Mayes: | "Dom called and he's really worried about you…" |
| Behrens: | "Yea, well, he should be." |
| Behrens: | "What do I need to do to tell Sue to fucking rehire you because fucking you had no knowledge of any of that." |
| Mayes: | "I don't even want to talk about that right now, I don't even know if, I don't know, Renee is not going to be happy |

---

[1] The Court has taken relevant excerpts from the recording. Not all of the conversation is included.

|          |                                                                                                                               |
|----------|-------------------------------------------------------------------------------------------------------------------------------|
|          | that I got fired, so she is like my only, my only way back in…"                                                               |
| Behrens: | "well it was an isolated incident dude like fucking there is no way"                                                           |
| Mayes:   | "I know that, but you have to look at it, look at it from their point of vision, I got fired for drugs already."              |
| Mayes:   | "Have you been doing dope?"                                                                                                    |
| Behrens: | "No, I haven't…no, clean, isolated incident, I told you…"                                                                     |
| Mayes:   | "I'm getting a lot of different stories from a lot of different people."                                                       |

*Gov't Ex. 2*, Dkt. 55-2.

On the same day, February 5, 2019, Detective McCarthy with the Boise Police Department called Mayes. Mayes and the Detective discussed returning Behrens' car and the Detective sought more information on Behrens' drug trafficking activity. At the outset of the call Mayes stated, "I didn't have anything to do with it." Mayes told Detective McCarthy that her social security card and birth certificate were in the car, along with many other belongings. She also told the Detective that she used the car and both she and Behrens loaned out the car. When discussing the car Mayes stated, "I'm high and dry without the vehicle … and I can't even believe this dumbass pulled this." Later, she added, "I've been clean for four months, I just had four months clean on Sunday, I had no idea he

was doing this shit, I'm not happy."[2] Detective McCarthy later asked if she knew

anyone who could be associated with the methamphetamine and Mayes said,

> I have no idea, like I said, I literally, I had certain conversations with him a couple months back that [. . .] certain people were coming back into his life and [. . .] he needed to stay away from those people [. . .] this is the last thing that I saw coming. I don't know where he was going, I don't know who it belongs to, I don't know if he paid for it or if he didn't, I literally got dropped off at work and found out the next morning when he didn't come to pick me up.

She further confirmed "I don't know anything about it." The call concluded with

Mayes promising to notify Detective McCarthy if she ever learned more about the

case or was ever contacted by someone demanding payment for the seized

methamphetamine. *Gov't Ex. 1*, Dkt. 55-1.

Three days later, on February 8, 2019, Behrens again called Mayes from the

jail. At the outset of the call Mayes and Behrens discussed getting the car back

from police impound, Mayes expressed how important it was that she have the car

because she needed it to get to work. Following that conversation Mayes began to

question whether a suppression hearing would be successful because Behrens' had

---

[2] This statement is corroborated by Mayes' text to Snapp on February 20, 2019: "I haven't used in 4 months 19 days but I'm starting to struggle" *Gov't Ex. 4*, Dkt. 55-4.

a prior felony and the following discussion ensued:[3]

| | |
|---|---|
| Behrens: | "Would you just trust me? Do you think I would just run some bullshit?" |
| Mayes: | "I don't really know anything." |
| Behrens: | "What do you mean by that." |
| Mayes: | "I Don't know anything…I don't know what the hell you were doing, I don't know why you were doing it, I don't know who was in the car, I'm getting like five different stories from like five different people." |
| Behrens: | "Well no one knows a thing." |
| Mayes: | "I'm doing everything that I can, or I'm trying to do everything I can, I'm even debating whether or not it would be better if I said it was mine." |
| Behrens: | "Stop." |
| Mayes: | "What? It was my car too." |
| Behrens: | "[Past defense counsel] went into private practice… she is familiar with my case, like my old case, the same circumstances, exact same, it's the same exact scenario all over again." |
| Mayes: | "You didn't learn the first time." |
| Behrens: | "You don't understand the circumstances of what happened." |
| Mayes: | "You're right I don't understand anything." |
| Behrens: | "You need to be real careful what you say right now." |
| Mayes: | "I don't need to be real careful about anything right now." |

*Gov't Ex. 3*, Dkt. 55-3.

---

[3] The Court has taken relevant excerpts from the recording. The entire conversation was not transcribed.

The government has moved to exclude hearsay statements offered by Snapp regarding Mayes' statements to him regarding her possession of the methamphetamine.

## LEGAL STANDARD

There is no express authority for motions in *limine* in either the Federal Rules of Criminal Procedure or the Federal Rules of Evidence. Nevertheless, these motions are well recognized in practice and by case law. *See, e.g.*, *Ohler v. United States*, 529 U.S. 753, 758 (2000). They key function of a motion in limine is to "exclude prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 (1984). A ruling on a motion in limine is essentially a preliminary ruling, which may be reconsidered in the context of trial. *Id.* at 41.

## ANALYSIS

"As a general rule, a party is prohibited from introducing a statement made by an out-of-court declarant when it is offered at trial to prove the truth of the matter asserted." *United States v. Torres*, 794 F.3d 1053, 1059 (9th Cir. 2015) (citing Fed. R. Evid. 801(c), 802.). Here, Mayes statements to Snapp that the methamphetamine found in Behrens' car was hers is an out-of-court statement offered to prove the truth of the matter asserted, i.e., that Mayes – not Behrens – possessed the methamphetamine. Hearsay statements are inadmissible at trial

unless they meet an exception articulated under Federal Rules of Evidence 803 and 804.

Behrens argues that the statements are admissible as statements against interest pursuant to Rule 804(b)(3).[4] Rule 804 provides exceptions to the hearsay rule when the declarant is unavailable. Rule 804(b)(3) provides that a statement against interest is a statement that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

To admit a statement into evidence under Rule 804(b)(3), the proponent must show that: (1) the declarant is unavailable to testify as a witness; (2) the statement tends to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless believing it to be

---

[4] Behrens also argues that the statements must be admitted to allow him to present a complete defense. Dkt. 53 at 7-8. The Ninth Circuit has held that excluding statements offered under Rule 804(b)(3) does not violate a defendant's right to present a complete defense where the statements do not possess sufficient indications of trustworthiness. *See United States v. Gadson*, 763 F.3d 1189, 1201 (9th Cir. 2014); *Phillips v. Herndon*, 730 F.3d 773, 778 (9th Cir. 2013).

true, and (3) corroborating circumstances exist clearly indicating that the statement is trustworthy. *U.S. v. Paguio*, 114 F.3d 928, 932 (9th Cir. 1997). Determining whether hearsay statements are admissible under Rule 804(b)(3) is left to the trial court's discretion. *U.S. v. Satterfield*, 572 F.2d 687, 690 (9th Cir. 1978).

### A.    Mayes' Unavailability

First, it is not clear whether or not Mayes will be unavailable at trial. Behrens argues that Mayes may appear at trial and either testify, whereby the issue would become moot, or would invoke her Fifth Amendment right against self-incrimination, in which case she would be unavailable. *See United States v. Wood*, 550 F.2d 435, 441 (9th Cir. 1976). However, Behrens has not attempted to subpoena Mayes or show what other "reasonable means" he is using to obtain her presence at trial. Fed. R. Evid. 804(a)(5). If Mayes does not appear at trial the Court would then have to determine whether she is truly unavailable under the meaning of Rule 804(a). Ultimately, whether Mayes is unavailable at trial, within the meaning of Rule 804(a), is not dispositive.

### B.    Statement Against Penal Interest

To fall within Rule 804(b)(3) as statement must be "truly self-inculpatory" meaning it was "sufficiently against the declarant's penal interest that a reasonable person in the declarant's position would not have made the statement unless

believing it to be true." *United States v. Gadson*, 763 F.3d 1189, 1199 (9th Cir.

2014) (citations omitted). On its face, the statement is self-inculpatory. Mayes tells

Snapp that it was her methamphetamine found in the car. She recognizes that she

could spend three years in jail if convicted for possessing the methamphetamine.

She also tells Snapp:

> "I'm busting my ass two jobs to get him a lawyer. I'm going to talk to
> one Monday about my idea. I'm worried that they'll say they don't
> know who it belongs to and charge as equals. I need to cover every
> avenue and be 100% sure I know what I'm getting in to."

This is not a case where the statement is neutral on its face. *See Williamson*

*v. United States*, 512 U.S. 594, 603 (1994).

However, there is a concern that the statement was intended to deflect blame

away from Mr. Behrens, more than accept criminal responsibility for the drugs

found in the car. *Gadson*, 763 F.3d at 1200. While, Mayes statement may have

tended to subject her to criminal liability, it is less clear that "a reasonable person

in the declarant's position would not have made the statement unless believing it to

be true." Fed. R. Evid. 804(b)(3).  This language requires more than a showing that

the declarant has made statements suggesting her criminal liability. It demands that

the statement be made under conditions that suggest the sincerity and reliability of

the declarant. Read in the broader context of all of her communications with

Snapp, Behrens, and the police, it appears that she is more interested in throwing a

**MEMORANDUM DECISION AND ORDER - 11**

wrench into the process, and thereby saving her boyfriend from prosecution, than she is in accepting responsibility for something she actually did.

### C.      Corroborating Circumstances

But, even if Mayes' statements are sufficiently against her penal interest to deem them trustworthy, they founder completely under the third requirement of Rule 804(b)(3), that corroborating circumstances exist clearly indicating that the statement is trustworthy. This is an exacting requirement. "The showing of corroborating circumstances must do more than tend to indicate the trustworthiness of the statements; they must clearly indicate it." *United States v. Ospina*, 739 F.2d 448, 452 (9th Cir. 1984); *see also United States v. Hoyos*, 573 F.2d 1111, 1115 (9th Cir. 1978) ("Congress meant to preclude reception of exculpatory hearsay statements against penal interest unless accompanied by circumstances solidly indicating trustworthiness. This requirement goes beyond minimal corroboration.") (citations omitted). The advisory committee note to Rule 804(b) explicitly states that "[t]he requirement of corroboration should be construed in such a manner as to effectuate its purpose of circumventing fabrication." Fed. R. Evid. 804 Advisory Committee Note. And, the Ninth Circuit case law has generally required that the party seeking admittance of the statement must show independent corroborating circumstances. *See, e.g. United States v. Layton*, 720 F.2d 548, 560 (9th Cir. 1983);

*United States v. Benveniste*, 564 F.2d 335, 341 (9th Cir. 1977).

Here, apart from the statements themselves, there is virtually no corroboration by external evidence. The only corroboration is that some of Mayes' personal belongings and identification were in the car. Since it is undisputed that Behrens and Mayes were involved in a romantic relationship at the time, this is unremarkable and provides no meaningful corroboration for her statement that the drugs in the car was hers. In fact, the overall context of Mayes' statements undermines, rather than corroborates, her confession to Snapp. Mayes had been clean for four months at the time Behrens was arrested. During the call with Detective McCarthy she denied ownership of the meth and said she didn't know where it came from. During the February 5 call with Behrens, Mayes asked him if he had been using dope, to which he replied "No, I haven't…no, clean, isolated incident, I told you…." During her call with Behrens on February 8, she told him she was thinking of ways to help him including telling him "I'm even debating whether or not it would be better if I said it was mine." To which Behrens replied, "Stop." On the same call, Mayes told Behrens

> I don't know anything…I don't know what the hell you were doing, I don't know why you were doing it, I don't know who was in the car, I'm getting like five different stories from like five different people.

All of this suggests Mayes' awareness of Behrens' guilt, rather than a belief in her

**MEMORANDUM DECISION AND ORDER - 13**

own responsibility for the drugs.

The Court concludes that Mayes' statements were not "truly self-inculpatory." Rather, they reflect a thinly veiled effort to throw a wrench into the judicial process and provide her significant other with an opportunity to avoid what she understood to be a likely sentence of life imprisonment. *See Paguio*, 114 F.3d at 933 (The possibility that a motive of love "would induce a false statement against penal interests cuts in favor of exclusion."). The Court also concludes that the very minimal corroboration of the statement does not clearly indicate its trustworthiness. Accordingly, the Government's motion will be granted.

## ORDER

**IT IS ORDERED that** the Government's Motion in Limine (Dkt. 51) is GRANTED.

DATED: August 27, 2020

B. Lynn Winmill
U.S. District Court Judge