UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDWARD ERIC BEHRENS,<br><br>Defendant. | Case No. 1:19-cv-00044-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Edward Behrens' Motion for Judgment of Acquittal, or in the Alternative, New Trial. Dkt. 105. Behrens' motion is based on the Government's failure to disclose *Brady* information prior to trial. The Court held a hearing on the motion on April 19, 2021. For the reasons that follow, the Court will grant the motion, vacate the guilty verdict, and grant Behrens a new trial.

## BACKGROUND

In August 2020, a jury convicted Behrens of possession with intent to distribute methamphetamine.

On February 2, 2019, Edward Behrens was arrested following a traffic stop. During the stop an officer discovered a pound of methamphetamine under the

driver's seat. Behrens was the driver and sole occupant of the vehicle. The officer testified that the methamphetamine was wrapped in a burrito shape and was partially sticking out from under the driver's seat. Dkt. 89 at 16-24.

On February 6, 2019, Detective McCarthy searched Behrens' vehicle. Dkt. 91 at 34. McCarthy found various personal items belonging to Heather Mayes, Behrens' then fiancé, and others. *Id.* Specifically, McCarthy found a Walmart money transfer receipt with no identifying information and checks belonging to Isaiah Hernandez. McCarthy photographed the checks belonging to Hernandez. *Id.* The photographs of these checks were attached to McCarthy's report and timely disclosed to Behrens. McCarthy sent the bag containing the methamphetamine for fingerprint analysis, but the cellophane wrapper surrounding the bag was never fingerprinted. Dkt. 90 at 82-83.

At trial, Behrens' criminal record was disclosed, including two convictions for possession with intent to distribute methamphetamine. Dkt. 90 at 97; Dkt. 91 at 103. Heather Mayes testified that she, not Behrens, primarily used the car and would loan it out to people in exchange for heroin. Dkt. 90 at 159. Behrens coworkers testified that he was a hard worker and had two jobs that he worked most days. Dkt. 90 at 183; Dkt. 91 at 5, 15. Behrens' probation officer testified that he had a DUI shortly after being released from prison in 2018. Dkt. 90 at 133. She

also testified that Behrens had missed four drug tests, but had not had any dirty UAs. *Id.* at 145.

Behrens testified that, although Mayes usually drove the Impala, he was in possession of it the entire day of his arrest. *Id.* at 118-19. Behrens testified that he was driving around looking for coworkers to cover his shift when he was stopped. He was also looking for Mayes because he believed she had relapsed on heroin. *Id.* at 122. Behrens testified that he knew of Isaiah Hernandez because he believed Mayes got heroin from Hernandez. *Id* at 128. Behrens stated that, after failing to find any of his coworkers, he was going to where he thought Hernandez lived because he thought Mayes may be there. Behrens was not surprised when Hernandez's name came up in relation to drug dealing. *Id.* at 144. Throughout trial Behrens maintained that that the methamphetamine found when he was stopped belonged to someone else and had been left in the car.

The evening of the second day of trial counsel for the Government sent defense counsel an email disclosing, for the first time, the reason Detective McCarthy photographed Hernandez's checks. *See* Dkt. 91 at 48; Dkt. 105-1 at 1-2. The email disclosed that, two to three weeks prior to Behrens' arrest, law enforcement observed Hernandez get into a black Cadillac that was being tracked because it was suspected of drug trafficking. Dkt. 105-1 at 1-2.

Initially, McCarthy testified that he took the photos of Hernandez's checks because he knew Hernandez was involved in a related investigation and was interested in the address on the checks. Dkt. 91 at 44-46. But, he also indicated that Hernandez was not known to be involved in dealing drugs. *Id.* at 46.

On a break, Defense counsel disclosed the email to the Court and raised concerns that there may be additional information on Hernandez that would be relevant to Behrens' case. *Id.* at 48. The Court gave counsel the option to continue or take a recess. *Id.* at 53-54. After a short recess, defense counsel chose to continue and was given latitude to broadly question McCarthy. The Court declined to rule on any *Brady* motion at that time. *Id.* at 60.

Defense counsel questioned McCarthy about Hernandez's criminal record, and what law enforcement knew about his drug trafficking activity. McCarthy testified that a few weeks prior to Behrens arrest, Hernandez was observed getting into a black Cadillac in a Walgreens parking lot. *Id.* at 66-67. Law enforcement was using a GPS tracker on the Cadillac and performing a "loose follow" on it. Therefore, McCarthy did not know how much time Hernandez spent in the Cadillac. *Id.* at 67-68. McCarthy testified that the Cadillac was stopped the following day and officers found methamphetamine in the vehicle. *Id.* at 69. Hernandez was not present when the Cadillac was stopped, and McCarthy testified

Hernandez was never observed with drugs. *Id.* at 69.

McCarthy then testified that Hernandez had been arrested in March 2019 for a past burglary and possession of heroin with intent to distribute. *Id.* at 71. Defense counsel asked McCarthy: "I do appreciate you letting me know this information, this new information. Is there anything else out there?" To which McCarthy responded: "No." *Id.* at 72. McCarthy never conducted any further investigation into Hernandez or why his checks were in Behrens' car. Nor did McCarthy ask Mayes any questions about the checks.

Following trial, the Government disclosed information about Hernandez to Behrens, including arrest reports, investigation reports, and text messages between law enforcement officers. Dkt. 105-4.

On September 30, 2020, defense counsel obtained two reports regarding Hernandez from a public records request. *Id* at 2. The first concerned a theft Hernandez committed at a Walmart on December 24, 2018. Dkt. 105-5 at 1. The second was an arrest report regarding Hernandez's March 3, 2019 arrest for possession of heroin. *Id.* at 6. In addition to possessing heroin, Hernandez was in possession of marijuana, baggies, a ledger of "people that owe," and an unloaded handgun. *Id.*

On October 7, 2020 the Government disclosed a Crime Stoppers report

generated on October 10, 2018. Dkt. 105-6 at 1. The report described Luis Rojas selling various drugs, including methamphetamine, at 1977 Owyhee Street. The reporting party provided a link to the facebook page of "Zay Rojas," which is a known alias of Hernandez. *Id.* at 1-2. The Government also disclosed an email from Detective McCarthy to Government counsel indicating there were some files on Hernandez that Behrens would need to obtain through a public records request. Dkt. 105-6 at 64

Also on October 10, the Government disclosed text messages regarding Hernandez that were sent between Officer Thompson, with the intelligence led policing unit, and various officers in the field. Dkt. 105-6 at 60. The first text exchange occured between Thompson and McCarthy on the morning of January 30, 2019:

> McCarthy: What's zay rojas' name?
>
> Thompson: Isaiah Hernandez I believe. I'm at micro briefing…will get it in a few.
>
> McCarthy: He just landed at that addy
>
> Thompson: [Sends picture of Hernandez].

Dkt. 105-6 at 65. Then on January 30, 2019, at 12:32 p.m., Officer Zubizarreta has the following exchange with Thompson:

> Zubizarreta: Hey was there a last name of Rojas involved in the shooting on Phillipi?

>
> Thompson: No, but Zay Rojas on FB, is Isaiah Hernandez is associated with it.
>
> Zubizarreta: In a meeting. Is he a bad dude? U have a pic? Ahhh. I thought he was connected with those guys?
>
> Thompson: Young, but bad. Hangs with Rudy Ortega, Sammy Martinez, etc. Guns/drugs. [Sends picture of Hernandez]

*Id.* at 69.

On November 5, 2020, the Government disclosed the tracking warrant for, and FBI report regarding, the black Cadillac Hernandez was seen in. Dkt. 105-7. The tracking warrant was issued on January 30, 2019. Law enforcement believed the Cadillac may have been transporting significant quantities of methamphetamine. The FBI report indicates that the Cadillac was stopped outside of Twin Falls, Idaho on January 31, 2019. When the Cadillac was searched, officers located 61.8 grams of methamphetamine, they also discovered that multiple sections of the vehicle had been taken apart in the past – consistent with drug smuggling activity.

On December 28, 2020 counsel for the Government emailed defense counsel that the tracking device data for the Cadillac is no longer available. Dkt. 105-8 at 1.

On April 8, 2021, the Government disclosed the existence of a report connecting Hernandez to a significant source of methamphetamine in the Treasure Valley. *Brady Hearing*, *Defense Exhibit A*. The report was generated prior to

December 2019. The source of supply was associated with the Cadillac that Hernandez was observed getting into, and which was ultimately stopped with methamphetamine in Twin Falls.

On April 2, 2021, Behrens filed his motion for acquittal, or a new trial, based on the Government's failure to disclose information regarding Hernandez. The Court held a hearing on the motion on April 19, 2021.[1] At the hearing Detective McCarthy testified that Hernandez was observed getting into the Cadillac on January 30, 2019, only 3 days before Behrens arrest, instead of 2-3 weeks as he had previously testified. McCarthy also testified that he observed Hernandez getting into the Cadillac at 2131 Owyhee Street – the same address listed on Hernandez's checks found in Behrens car – not at a Walgreens. McCarthy further testified that the Cadillac was being surveilled because it may have been bringing 10 pounds of methamphetamine to Idaho from Las Vegas. Finally, McCarthy testified that he took the photos of Hernandez's checks because they matched the address where Hernandez was seen getting into the Cadillac.

---

[1] At the hearing, Behrens called Christopher Jackson, a former cell mate, who relayed a story Hernandez had told him regarding a female stealing methamphetamine. According to the testimony the female's vehicle was similar to Behrens' Impala and the time period would have been about correct. Hernandez allegedly relayed this information to Jackson sometime between October 2019 and February 2020. Even if the story is true, it is not relevant to determining whether the Government violated its disclosure obligations under *Brady*.

At the hearing, Officer Thompson testified that all of the information provided to Behrens since trial was available and could have been provided prior to trial.

Prior to the hearing, Heather Mayes submitted a declaration stating that defense counsel had shown her a picture of Isaiah Hernandez in October 2020 and that she recognized him as Zay Rojas. Dkt. 105-2 at 1. Mayes believed it was likely Hernandez was in the car shortly before Behrens was arrested. *Id.* at 2.

## LEGAL STANDARD

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Court held that the suppression of evidence favorable to the accused violates due process of law, irrespective of whether the suppression is done in good faith or bad.

To obtain a new trial,[2] or other relief, based on an alleged *Brady* violation, the Defendant must show that 1) the evidence at issue was favorable, either

---

[2] Defendant brings his motion under Federal Rules of Criminal Procedure 29 and 33, and *Brady v. Maryland*. The Court's initial view was that the correct procedural mechanism to bring a motion for a new trial based on a *Brady* violation was Rule 33. However, upon further research and reflection, the Court finds that a defendant may bring a motion for a new trial, or other appropriate relief, due to a *Brady* violation, without reference to Rule 33. This is because a *Brady* violation is a due process violation, and the Court has inherent supervisory authority to craft an appropriate remedy curing such a violation. *See United States v. Garrison*, 888 F.3d 1057, 1065 (9th Cir. 2018). Therefore, the 14-day time limit of Rule 33 does not apply. Indeed, in *United States v. Jernigan*, 492 F.3d 1050 (9th Cir. 2007), the Defendant had been convicted in 2001 and brought a motion for a new trial under *Brady* three years later. The Ninth Circuit held (Continued)

because it is exculpatory or impeaching; 2) the evidence was suppressed by the Government, willfully or inadvertently; and 3) the suppressed evidence must be material to the guilt or innocence of the defendant. *United States v. Jernigan*, 492 F.3d 1050, 1051 (9th Cir. 2007).

## ANALYSIS

The first two prongs of the *Brady* analysis are easily met. The evidence that Hernandez was 1) a known associate of methamphetamine traffickers and 2) Detective McCarthy observed him in a Cadillac thought to be associated with significant amounts of methamphetamine three days before Behrens arrest is both exculpatory and impeaching. The evidence is exculpatory because it demonstrates that someone who's checks were in Behrens car had access to pound quantities of methamphetamine. It is impeaching because it calls into question the thoroughness of law enforcement's investigation of Behrens.

Further, the evidence of Hernandez, and his aliases, could have led Behrens to other favorable evidence. *See United States v. Price*, 566 F.3d 900, 911–12 (9th

---

that the Defendant was entitled to a new trial based on the suppressed evidence. In *Jernigan*, the 9th Circuit never referenced Rule 33 nor its 14-day time limit. Further, the Ninth Circuit reviews the denial of a motion for a new trial based on a *Brady* violation de novo, while it reviews a denial of a of a Rule 33 motion for abuse of discretion. *United States v. Miller*, 953 F.3d 1095, 1107, n.17 (9th Cir. 2020).

Cir. 2009). For instance, after trial, Heather Mayes submitted a declaration that she recognized Hernandez as "Zay Rojas" and it was likely he used the Impala in the days preceding Behrens arrest. Dkt. 105-2 at 1. While Behrens was aware of the fact that Hernandez was a drug dealer, the late-disclosed evidence would have given him additional avenues to investigate his defense.

The evidence regarding Hernandez was not fully disclosed. It was not until the *Brady* hearing that Behrens learned that Detective McCarthy observed Hernandez get into the Cadillac at 2131 Owyhee Street – the address listed on the checks. While the general contours of law enforcement's knowledge of Hernandez was disclosed during trial, the specific evidence tying Hernandez to methamphetamine traffickers, and law enforcement's knowledge thereof, was not disclosed until after trial – even as late as the *Brady* hearing.

The real issue is whether the suppressed evidence was material. The touchstone of materiality review is whether admission of the suppressed evidence would have created a "'reasonable probability' of a different result." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)). A defendant need not show that she "would more likely than not have received a different verdict with the evidence." *Id*. Instead, she must show only that "the government's evidentiary suppression 'undermines confidence in the

outcome of the trial.'" *Id.* (quoting *Bagley*, 473 U.S. at 678). In considering whether the failure to disclose exculpatory evidence undermines confidence in the outcome, judges must "'undertake a careful, balanced evaluation of the nature and strength of both the evidence the defense was prevented from presenting and the evidence each side presented at trial.'" *Bailey v. Rae*, 339 F.3d 1107, 1119 (9th Cir. 2003) (quoting *Boss v. Pierce*, 263 F.3d 734, 745 (7th Cir.2001)). In other words, "the withheld evidence must be analyzed 'in the context of the entire record.'" *Benn*, 283 F.3d at 1053 (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)).

At trial, Behrens was able to show, through McCarthy's testimony, that Hernandez was observed getting into a Cadillac in a Walgreens parking lot a few weeks before Behrens arrest. The Cadillac was being surveilled because it may have been carrying narcotics, but Hernandez was never observed with drugs. The Cadillac was stopped the next day and some quantity of methamphetamine was found. Behrens was also able to show that Hernandez had previously been arrested for possession of heroin. Behrens was also able to show that Mayes primarily drove the Impala and loaned it out in exchange for heroin.

If Behrens had the late disclosed evidence he would have been able to tell a far more compelling story suggesting that Hernandez was the person who left the

methamphetamine in Behrens' car. He could have shown that Hernandez was associated with a large-scale methamphetamine trafficker, and that the methamphetamine trafficker was associated with the Cadillac. He could have provided evidence that the Cadillac may have been transporting ten pounds of methamphetamine at the very time when Hernandez was observed getting into it, at his residence, just three days before Behrens' arrest.

The Government contends that Behrens was aware Hernandez was a drug dealer and had adequate opportunity to make use of the mid-trial disclosures by thoroughly cross-examining Detective McCarthy. But, Heather Mayes was a heroin addict and Behrens testified that he knew Hernandez may have been supplying her heroin. Simply put, Behrens had no reason to connect Hernandez to methamphetamine trafficking until he was provided evidence disclosed by the Government after trial. Moreover, McCarthy's testimony actually deflected attention away from Hernandez in a way that was inconsistent with the evidence which law enforcement had in its possession. Specifically, McCarthy first testified at trial that Hernandez was not a known drug dealer, but later testified that Hernandez had been arrested for possession with intent to distribute heroin. Dkt. 91 at 46, 71. But, more importantly the jury never learned the connection between Hernandez, the Cadillac, and significant quantities of methamphetamine.

Behrens was also not able to fully investigate the information belatedly disclosed by the government. Information that could have led to potentially exculpatory evidence – such as Mayes recognition of Hernandez as Zay Rojas and her disclosure that he used her car days before Behrens' arrest.

Behrens' argument at trial was that the methamphetamine belonged to someone else and that he was not aware of it. Even though the methamphetamine was found at his feet, Behrens presented a credible argument that the methamphetamine was not his. Had Behrens been provided all the information which law enforcement had about Hernandez, that credible argument may well have become convincing.

The Court has carefully reviewed the trial transcript, and entire record, and having done so concludes that the evidence suppressed by the Government is material. Had Behrens had the suppressed evidence in time to make use of it, there is a reasonable probability that he could have altered at least one juror's assessment of his guilt. *Price*, 566 F.3d at 914.

The Court finds Behrens due process rights were violated when the government failed to disclose favorable evidence in a manner that was prejudicial

to the outcome of the case. Accordingly, the Court will grant Behrens a new trial.[3]

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion for Judgment of Acquittal, or in the Alternative, New Trial (Dkt. 105) is **GRANTED**.

2. The Jury's Verdict of Guilty (Dkt. 88) is **VACATED**.

3. The parties are directed to contact the law clerk assigned to this case to schedule a trial setting conference.

DATED: May 27, 2021

B. Lynn Winmill
U.S. District Court Judge

---

[3] Behrens' motion asks for a judgment of acquittal. While district courts have discretion in shaping remedies for *Brady* violations, such remedies should be tailored to the injury suffered. Dismissing the indictment, or in this case, entering a judgment of acquittal, is a drastic step that is only appropriate when there was flagrant prosecutorial misconduct. *U.S. v. Struckman*, 611 F.3d 560, 577 (9th Cir. 2010). That is not the case here.